In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Eric K. GRAF, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Eric K. GRAF, Respondent.

Supreme Court

*No. 02–2196–D. Decided August 12, 2003.*

2003 WI 122

(Also reported in 667 N.W.2d 340.)

¶ 1. PER CURIAM. We review the referee's recommendation that Attorney Eric K. Graf's license to practice law in Wisconsin be suspended for a period of two years for professional misconduct. The referee also recommended that Attorney Graf be required to pay the costs of the proceeding. Attorney Graf did not appeal this report and recommendation.

¶ 2. We adopt the referee's findings of fact and conclusions of law and agree that the seriousness of Attorney Graf's professional misconduct warrants the suspension of his license to practice law in Wisconsin for a period of two years. We further agree that he should pay the costs of this proceeding.

¶ 3. Attorney Graf was admitted to practice in 1981. His license to practice law in Wisconsin is presently under suspension. Attorney Graf was administratively suspended on June 2, 1998, for failing to establish compliance with mandatory Continuing Legal Education (CLE) requirements. He later submitted a petition for reinstatement in which he averred that his practice during his period of suspension had been "very infrequent." Upon investigation the Board of Professional Responsibility (Board) concluded that Attorney Graf had practiced law during his suspension. Attorney Graf also failed to cooperate with the Office of Lawyer Regulations' (OLR) subsequent efforts to investigate him. By order dated August 27, 2001, Attorney Graf was privately reprimanded for that misconduct and ordered to pay the costs of the OLR proceeding. He failed to pay the OLR costs and, by order dated February 26, 2002, his license was again suspended.

¶ 4. The facts giving rise to this disciplinary matter arise from the OLR's investigation into Attorney Graf's extensive unauthorized practice of law and other misconduct with respect to several client matters during the various periods he was under suspension. Attorney Graf has not responded to the OLR's attempts to investigate him. Despite numerous attempts, the OLR was unable to effect service of the complaint upon Attorney Graf, either in person or by mail.

¶ 5. Ultimately, the matter was submitted to Referee Janet Jenkins and, on October 10, 2002, the OLR filed a Motion for Default. A hearing on the OLR's motion was held on January 2, 2003. Attorney Graf did not appear at the hearing. The referee made the following findings of fact and recommendations based on the complaint and the evidence presented by the OLR at the hearing, and ultimately granted the OLR's motion.

¶ 6. The OLR presented substantial evidence of Attorney Graf's misconduct with respect to a grievance involving his representation of Andrea Utrie (Ms. Utrie), who formerly taught in the Beaver Dam Unified School District (School District).

¶ 7. In April 1999 the School District reassigned Ms. Utrie to another school within the district. Ms. Utrie was unhappy about this action and retained Attorney Graf to represent her. In July 1999 the School District informed Attorney Graf that the Beaver Dam Education Association (Teachers' Union) was Ms. Utrie's exclusive representative for grievances against the School District.

¶ 8. Ms. Utrie accepted a job as a teacher with another school district in the summer of 1999 but she advised Attorney Graf that she wished to pursue her grievance against the School District.

¶ 9. The School District denied Ms. Utrie's grievance in September 1999 and the Teachers' Union declined to pursue the matter.

¶ 10. At this time Attorney Graf advised Ms. Utrie that her claim was against the Teacher's Union and would likely be an expensive endeavor. Ms. Utrie indicated that she did not wish to sue the Teachers' Union. She wanted to continue her claims against the School District.

¶ 11. In November 1999 Attorney Graf drafted a complaint against the School District alleging wrongful acts on the part of the School District against Ms. Utrie and seeking itemized damages for lost compensation. Ms. Utrie signed the complaint on November 15, 1999.

¶ 12. Attorney Graf never filed the claim against the School District. Nonetheless, he repeatedly assured Ms. Utrie that he had obtained sheriff's service of the claim on the School District. In addition, he represented to Ms. Utrie and subsequently to OLR in a March 31, 2001, submission, that he had conducted witness interviews with potential witnesses. However, he failed to produce any interview notes or documentation of such interviews when requested to do so.

¶ 13. In the spring of 2000 Attorney Graf failed to respond to numerous telephone calls and e-mails from Ms. Utrie in which she sought information about the progress of her claim against the School District.

¶ 14. On May 11, 2000, Attorney Graf provided a written response to Ms. Utrie's stated desire to settle her claim against the School District, asking her specifically what relief she requested.

¶ 15. On June 9, 2000, Attorney Graf and Ms. Utrie had a meeting. At this time Attorney Graf was under CLE suspension but he did not tell Ms. Utrie of

his license suspension. Ms. Utrie requested a copy of the claim she was told had been filed against the School District, proof of service, and copies of witness statements. Attorney Graf again reiterated that he had obtained service on the School District and had contacted witnesses, and that documentation of such would be provided later. He never gave Ms. Utrie anything to support his assertions that the claim against the School District had been filed and served.

¶ 16. On July 3, 2000, Ms. Utrie learned that there was no record of any claim having been served on the School District. In response to Ms. Utrie's questions Attorney Graf stated that he had sent a "short" notice of claim by registered mail and that he must have sent along the "legal" version by regular mail.

¶ 17. On July '7, 2000, Ms. Utrie sent Attorney Graf a certified letter terminating his representation and demanding that he return $1500 of the $2000 retainer she had paid. She further demanded an itemized statement of services rendered and the return of certain portions of the file. Attorney Graf did not respond to Ms. Utrie's letter.

¶ 18. Ms. Utrie then asked another attorney to represent her. This attorney contacted Attorney Graf by telephone and asked him to forward the case file. Although he promised to do so, Attorney Graf never sent anything to the attorney and the attorney informed Ms. Utrie that he could not help her because he could not obtain the necessary information.

¶ 19. On January 31, 2001, Attorney Graf sent Ms. Utrie a memo, in which he stated that there was nothing further remaining that he could do for her in this matter. Ms. Utrie responded with a memo, disputing his contentions and again demanding the return of her case file.

¶ 20. Attorney Graf also represented Ms. Utrie in connection with a potential worker's compensation claim against the School District regarding denial of certain medical benefits relating to a leave of absence taken during the 1998–1999 school year.

¶ 21. On July 1, 1999, Attorney Graf filed a request for hearing with the Department of Workforce Development (DWD). Attorney Graf later informed Ms. Utrie, on several occasions, that he had filed the necessary worker's compensation appeal regarding the denial of medical benefits. However, Attorney Graf never filed anything or took any action to further Ms. Utrie's worker's compensation claim.

¶ 22. Following their June 9, 2000, meeting, Attorney Graf wrote to Ms. Utrie on June 13, 2000, with instructions as to how she could obtain relevant records from the School District under the Wisconsin public records law. This legal advice was provided at a time when he was under a CLE suspension.

¶ 23. The referee also made detailed findings relating to Attorney Graf's misrepresentation to the Board of Bar Examiners (BBE), and failure to cooperate with the OLR.

¶ 24. As noted, Attorney Graf was suspended for noncompliance with CLE requirements for a period of time that included June 5, 2000, through August 1, 2000. During this time Attorney Graf filed a sworn petition for license reinstatement with the BBE, in which he averred: "I have not practiced law since being notified of ineligibility, this is causing a hardship, and I respectfully ask that prompt action be taken so as to permit me to resume the practice of law."

¶ 25. On July 25, 2000, Attorney Graf filed with the BBE an amended sworn petition for license reinstatement in which he stated: "I have not practiced law

after the close of business on June 2, 2000, and I first learned of ineligibility on June 9, 2000." These two sworn statements were false.

¶ 26. By letter of August 30, 2000, the OLR informed Attorney Graf of Ms. Utrie's grievance and directed him to respond on or before September 25, 2000. Attorney Graf did not respond. The OLR sent an additional notice of the investigation by certified mail dated October 9, 2000, establishing a new response deadline of October 20, 2000.

¶ 27. Upon learning that Attorney Graf had not picked up mail at the location where these notices were sent, the OLR sent a notice of the grievance investigation to Attorney Graf by regular and certified mail to his home address in Madison. The OLR established a response deadline of November 17, 2000.

¶ 28. Attorney Graf signed for the certified letter. He did not, however, file a written response within the established deadline.

¶ 29. Eventually the OLR obtained a temporary suspension of Attorney Graf's law license for willful non-cooperation with the grievance investigation. Following imposition of the suspension Attorney Graf finally submitted a written response.

¶ 30. The referee also made findings regarding several other incidents of Attorney Graf practicing law while under suspension. Specifically, while Attorney Graf was employed as counsel for the Wisconsin Physicians Service (WPS) he filed a motion to reopen a default judgment while under CLE suspension. He also filed a cross-claim in the same action, discussed settlement of claims with opposing counsel, and submitted a proposed stipulation with documents identifying Attorney Graf as WPS's attorney, all while under suspension.

¶ 31. Attorney Graf admitted that he never informed his client, WPS, opposing counsel, or the court of his license suspension until he finally spoke with his supervisor on May 30, 2001. Attorney Graf further indicated that he performed legal work for WPS through May 30, 2001, although he did not make any court appearances subsequent to May 23, 2001.

¶ 32. A grievance was filed against Attorney Graf regarding his representation of WPS. Attorney Graf did not respond to the OLR's notice and request for a response in this matter.

¶ 33. Following a search of online records available through the Wisconsin Court System's Consolidated Court Automation Programs (CCAP), Attorney Graf was identified as attorney of record in more than 70 circuit court cases during periods when his license was suspended. The CCAP information revealed:

a. 44 cases pending in the Wisconsin Courts reflecting Graf's practice during the time of suspension related to dues nonpayment;

b. 22 cases reflecting practice of law by Graf during a CLE suspension; and

c. 64 cases reflecting Graf's practice of law during the suspension for willful non-cooperation of a grievance investigation.

¶ 34. By letter dated December 20, 2001, the OLR staff provided Attorney Graf with a notice that an OLR inquiry was being commenced in connection with his practice of law while suspended. The OLR letter requested Attorney Graf to provide a written response to the inquiry on or before January 16, 2002. It also advised him as to his duty to provide full and fair disclosure of all facts regarding the alleged misconduct.

¶ 35. Attorney Graf did not respond. A subsequent certified letter was returned to the OLR unclaimed. Attorney Graf has never filed any written response to these allegations.

¶ 36. Based on these facts the referee made the following conclusions of law. First, the referee concluded that with respect to Ms. Utrie's potential claims arising from her employment with the School District, Attorney Graf failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[1] Attorney Graf failed to contact witnesses with potentially relevant information, failed to promptly ascertain the party or parties against whom to assert a claim, failed to pursue such a claim generally, and, in particular, failed to file a timely notice of claim against the School District.

¶ 37. The referee also concluded that by failing to surrender case file materials to Ms. Utrie or her successor counsel, Attorney Graf failed to take steps to the extent reasonably practical to protect a client's interest in violation of SCR 20:1.16(d).[2]

¶ 38. With respect to Ms. Utrie's worker's compensation claim, the referee concluded that by failing to file and otherwise pursue this claim, Attorney Graf

[1] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

¶ 39. In addition, by failing to affirmatively apprise a client of a case status and by failing to respond to inquiries from Ms. Utrie, Attorney Graf failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).[3]

¶ 40. In addition, by misrepresenting to Ms. Utrie that a Notice of Claim had been served, Attorney Graf engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).[4]

¶ 41. The referee also concluded that by performing legal services on behalf of Ms. Utrie, including the client meeting with her on June 9, 2000, and sending a letter of June 13, 2000, to her concerning the open records law, Attorney Graf practiced law during a CLE suspension, in violation of SCR 31.10(1).[5]

---

[3] SCR 20:1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 31.10(1) provides:

> (1) If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the state bar membership of the lawyer shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court and to each judge of a court of record in this state. A lawyer shall not

¶ 42. The referee also concluded that by failing to notify Ms. Utrie he was suspended and/or advising her to seek representation elsewhere, Attorney Graf failed to comply with requirements imposed upon a lawyer following suspension, in violation of SCR 22.26(1)(a)(b).[6]

¶ 43. The referee further concluded that by mis-representing to BBE that he had not practiced subsequent to notice of a CLE suspension, Attorney Graf engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).

¶ 44. In addition, by failing to file a written response to a grievance investigation by OLR within 20 days of being served by ordinary mail with a request for a written response, Attorney Graf violated SCR 22.03(2).[7]

engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[6] SCR 22.26(1)(a) and (b) provide:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

[7] SCR 22.03(2) provides:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20

¶ 45. Attorney Graf also violated SCR 31.10[8] by providing legal services on behalf of WPS at a time when he was under suspension. By failing to notify WPS of his suspension status, Attorney Graf violated SCR 22.26(1)(a)(b). And, by failing to notify the court or opposing counsel of his suspension status, he failed to comply with the duty imposed upon an attorney, in violation of SCR 22.26(1)(c).[9]

days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[8] SCR 31.10 provides: Noncompliance.

(1) If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the state bar membership of the lawyer shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court and to each judge of a court of record in this state. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

(2) If the board believes that a false report has been filed, the board may refer the matter to the office of lawyer regulation.

[9] SCR 22.26(1)(c) provides:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an

¶ 46. In addition, by continuing to represent WPS after suspension, in particular, by engaging in settlement negotiations and by submitting a stipulation and cover letter to another attorney, Attorney Graf violated SCR 22.26(2).[10]

¶ 47. The referee concluded that Attorney Graf also violated SCR 22.03(2) by failing to file a written response to a grievance investigation within 20 days of being served by ordinary mail of a request for such a written response. Similarly, by failing to respond to an investigation within 20 days of being served by ordinary mail with a request for a response, Attorney Graf violated SCR 22.03(6).[11]

¶ 48. Attorney Graf also violated SCR 10.03(6)[12] by serving as legal counsel of record in some 44 Wis-

---

attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

[10] SCR 22.26(2) provides:

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

[11] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[12] SCR 10.03(6) provides: "Penalty for nonpayment of dues. If the annual dues of any member remain unpaid 120 days after the payment is due, the membership of the member may be

388

consin circuit court cases during a period of license suspension for dues nonpayment. He also violated SCR 31.10(1) by serving as legal counsel of record in 22 Wisconsin circuit court cases while his license was suspended for noncompliance with CLE requirements. And, by serving as counsel of record in 64 Wisconsin circuit court cases while his law license was suspended for his willful failure to cooperate in an investigation, Attorney Graf violated SCR 22.26(2).

¶ 49. The referee considered a number of factors in evaluating the appropriate discipline for Attorney Graf's misconduct. These included:

(1) The nature of the conduct, including consideration of: (a) the duty violated; (b) the attorney's mental state at the time of the conduct; and (c) the actual or potential injury caused by the conduct to any individual, the public or the profession; and

(2) The existence of any aggravating or mitigating circumstances; and

(3) The nature of the lawyer including consideration of: (a) the attorney's previous conduct/misconduct; (b) the attorney's attitude regarding the conduct; and (c) the attorney's rehabilitation potential; and

(4) The sanctions imposed upon others for similar conduct.

¶ 50. The referee then commented on the extensive facts presented by the OLR and set forth herein and observed that: "[Graf's] apparent willingness to blithely and repeatedly ignore his obligations to his

suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues may practice law during the period of the suspension."

clients and to the profession make the likelihood of rehabilitation minimal, at best." The referee then accepted the OLR's recommendation that Attorney Graf be suspended for two years and required to pay the costs of the OLR proceeding, which totaled $779.12.

¶ 51. We adopt the referee's report and recommendation. The seriousness of Attorney Graf's misconduct with respect to his mishandling of numerous client matters warrants the suspension of his license to practice law in Wisconsin for a period of two years.

¶ 52. IT IS ORDERED that the license of Attorney Eric K. Graf to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶ 53. IT IS FURTHER ORDERED that this suspension does not affect the existing suspensions, including his failure to comply with an order to reimburse OLR for the costs associated with a previous disciplinary proceeding.

¶ 54. IT IS FURTHER ORDERED that Attorney Eric K. Graf shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to activities following suspension.

¶ 55. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Eric K. Graf pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Eric K. Graf to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 56. PATIENCE D. ROGGENSACK, J., did not participate.